**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KENNETH BERRY,

Plaintiff,

v. Civ. No. 12-576 GBW/SMV

EMERALD CORRECTIONAL MANAGEMENT, INC.,

Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE AND DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

THIS MATTER is before the Court on Defendant's Motion to Strike Affidavit and Defendant's Motion to Dismiss Amended Complaint. *Docs. 13, 14*. Plaintiff has responded and the Court is fully advised. *See docs. 15, 16, 18, 19, 20, 21*.

**Background**

Plaintiff's Amended Complaint[1] asserts a claim under 42 U.S.C. § 1983, alleging that Defendant violated his federal constitutional rights,[2] and a claim under the New Mexico Tort Claims Act, N.M. Stat. Ann. § 41-4-12. *See doc. 11*. The factual allegations

[1] Plaintiff's original Complaint made the same claims but included the County of Lincoln as a defendant. *Doc. 1*. Through the proper filing of an Amended Complaint, however, the original Complaint is superseded and "render[ed] . . . without legal effect." *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007). Thus, the County of Lincoln is no longer a defendant. Relatedly, Defendant's Motion to Dismiss the original Complaint is rendered moot and will be DENIED on that basis. *See doc. 6*.

[2] Plaintiff's Amended Complaint does not identify the constitutional provisions which he claims were violated. A review of his allegations, however, reveals that he complains of the conditions of his confinement as a state pretrial detainee. *See doc. 11*. Such a claim is governed by the Due Process Clause of the Fourteenth Amendment. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). That said, the Eighth Amendment provides the standard for such claims. *Id*.

in the Amended Complaint are as follows. During the relevant time, Plaintiff was a pre-trial detainee at Lincoln County Detention Center (LCDC). *Id*. Defendant Emerald Correctional Management LLC operates this facility as part of a contractual arrangement with Defendant County of Lincoln. *Id*. ¶ 8. According to the Amended Complaint, LCDC "was understaffed and had been consistently understaffed for months prior to the battery. The staff who were employed did not have even minimal training or skills to operate a mixed classification jail facility housing inmates charged with misdemeanor and felony offenses in pretrial and post trail [sic] confinement." *Id*. ¶ 11. Plaintiff contends that Defendant Emerald knew of the inadequacies in staffing and training. *Id*. ¶ 12. While in custody at LCDC, Plaintiff was attacked by other detainees. *Id*. ¶ 13. The assault included the use of "a blackjack type unauthorized weapon" and Plaintiff "suffered serious medical injuries, medical costs and pain and suffering." *Id*. The Amended Complaint concludes that the insufficient staffing of the jail and the inadequacy of the training of the staff was the cause of the assault, and Defendant's knowledge of the same "demonstrated Defendant Emerald's willful indifference." *Id*. ¶ 14. Plaintiff seeks actual and punitive damages as well as attorney's fees. *Id*. ¶¶ 16-18.

Plaintiff attached to the Amended Complaint the affidavit of Charlie White, who was employed as a correctional officer at LCDC during the events described. Mr. White's affidavit avers that an "inordinately high rate of turnover" existed at LCDC,

resulting in a "chronic shortage" of staff. *Id*., Ex. 1, ¶ 4. He alleges LCDC staff members "were either untrained or undertrained in the basic areas of corrections" and that he witnessed "numerous inmate on inmate assaults . . . which I attributed directly to the insufficiency of staff and lack of training." *Id*. ¶¶ 4, 7.

**Motion to Strike**

Defendant moves to strike Mr. White's affidavit. *Doc. 13*. Federal Rule of Civil Procedure 10(c) says, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Plaintiff believes this rule allowed him to file Mr. White's affidavit along with the Amended Complaint. *Doc. 17*. Defendant argues affidavits are "evidentiary matters" and not "written instruments" within the meaning of Rule 10(c). *Doc. 13* at 2-3. The rule's text and structure, as well as the weight of the case law, show that Defendant is correct.[3]

Rule 10(c) applies only to "written instruments." Fed. R. Civ. P. 10(c). Black's Law Dictionary defines "instrument" as a "written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." *Black's Law Dictionary* 869 (9th ed. 2009). An affidavit is unlike the listed documents because it does not define any rights or duties, but is rather a written

[3] In the United States District Court for the District of New Mexico, this identical issue was recently addressed in a remarkably similar case. *See Ramos v. County of Lincoln*, No. 12-cv-575 (D.N.M. Sept. 10, 2012) (C.J. Baldock sitting by designation) (order granting motion to strike and motion to dismiss). As the undersigned agrees with Judge Baldock's analysis and the cases closely parallel each other, the undersigned has borrowed liberally from Judge Baldock's opinion on this point without further citation or quotation marks.

declaration of facts. Rule 10(c)'s use of the word "instrument," as opposed to a more general term like "document," suggests the rule does not allow the incorporation of affidavits into a complaint.

The structure of the Rules of Civil Procedure also supports Defendant's argument. A motion to dismiss under Rule 12(b)(6) for failure to state a claim is designed to "test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (internal quotation marks omitted). A motion for summary judgment under Rule 56(a), by contrast is designed to test the evidence in a developed record "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court may look to evidence in the record such as "depositions, documents, electronically stored information, *affidavits or declarations* . . . ." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).

Evidentiary documents, such as affidavits, are therefore inappropriate at the motion to dismiss stage, which is designed to test allegations, not evidence. Some written instruments within the scope of Rule 10(c), such as contracts or promissory notes, obviously have evidentiary value that is relevant on summary judgment. But they are also appropriately incorporated into a complaint when they form the basis for the plaintiff's claim. That is, a written instrument is often an integral part of a plaintiff's allegations. An affidavit produced in the same case, however, is not. So, grafting

sworn statements such as affidavits onto the factual allegations in a complaint is inappropriate at the motion to dismiss stage.

Case law on the issue supports Defendant's view. In *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989), the Third Circuit held that an affidavit is not "a 'written instrument' as that term is used in Rule 10(c)." The court said Rule 10(c) applies to exhibits such as "contracts, notes, and other 'writings on which a party's action or defense is based.'" *Id*. (alterations omitted) (*quoting* 5 Wright & Miller, *Federal Practice and Procedure* § 1327 (2d ed. 1987). A contrary result, the court reasoned, would "blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted." *Id*.

The Ninth Circuit also holds that "[a]ffidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Similarly, the Sixth Circuit held that, in a suit challenging a local ordinance, the district court could consider attached copies of the ordinance and the legislative record, but properly excluded "additional affidavits . . . that went beyond the legislative record." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 297 (6th Cir. 2008). Only one older circuit case apparently treated affidavits as falling within Rule 10(c). *Schnell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir. 1969), *overruled on other grounds by City of Kenosha v. Bruno*, 412 U.S. 507 (1973). However, as

this result was reached without elaboration and is against the weight of authority, this Court does not find it persuasive.

Finally, in keeping with the more recent cases, a leading treatise on federal practice supports the exclusion of affidavits. 2 *Moore's Federal Practice – Civil* § 10.05[2] ("Nor should peripheral writings by non-parties or affidavits be allowed as pleading exhibits."). Based on the rule's text and the authority described above, the Court holds that an affidavit is not a "written instrument" within the meaning of Rule 10(c) and therefore cannot be considered "part of the pleading."[4] Accordingly, the Court GRANTS Defendant's Motion to Strike and will not consider Mr. White's affidavit when deciding Defendant's Motion to Dismiss.

**Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *Id*. Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if

[4] The practice of considering *Martinez* reports does not dictate a different result. *See Ramos*, No. 12-cv-575, at 6, n. 4 (order granting motion to strike).

assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

To establish liability for Emerald under § 1983, Plaintiff must establish that "(1) that a[n entity] employee committed a constitutional violation, and (2) that a[n entity] policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (*citing Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978)); *see also Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1216 (10th Cir. 2003) (requirements of *Monell* apply to private entities sued under § 1983). Plaintiff fails to state a plausible claim for such liability because the Amended Complaint lacks any facts which could establish the second prong.

The "policies" or "customs" on which Plaintiff's claims rely are (1) inadequate training and (2) insufficient staffing. The Supreme Court has directly addressed "failure to train" claims in *City of Canton v. Harris*, 489 U.S. 378 (1989). The Court held that § 1983 entity liability may be based on inadequate training "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [entity's agents] come in to contact," and that deliberate indifference was the moving force of the violation of the plaintiff's federally protected right. *Id*. at 388-89. The plaintiff must demonstrate specific training deficiencies and either (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training is obviously necessary to avoid constitutional violations. *Id*. at 390. The

plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," as to amount to an entity policy of deliberate indifference to those rights. *Id*. In *Canton*, the Court made clear that negligent or even grossly negligent training does not in itself give rise to §1983 liability for an entity. *Id.* at 390-91. Moreover, "for liability to attach … the identified deficiency in [the] training program must be closely related to the ultimate injury." *Id*. at 391. Therefore, in this case, Plaintiff must also prove that the deficiency in training actually caused the agent's indifference and, thus, the assault and resulting injury.

The Amended Complaint fails to make factual allegations sufficient to meet either the "deliberate indifference" or "causation" requirement. In sum, the Amended Complaint states the following with respect to failure to train: (1) the "staff who were employed did not have even minimal training or skills to operate a mixed classification jail facility housing inmates charged with misdemeanor and felony offenses in pretrial and post trail [sic] confinement;" (2) Defendant "knew of … the inadequacy of the training preparing the staff to control the introduction and secretion of contraband and the search and seizure of unauthorized items which could be used as weapons;" (3) the assault of Plaintiff by other detainees involved the use of a "blackjack type unauthorized weapon;" and (4) the "inadequacy of the training offered the staff who were employed was the cause of the violation of the constitutional rights alleged by

Plaintiff." *Doc. 11*, ¶¶ 11-14. Even assuming that these allegations identify with sufficient specificity the claimed training deficiencies, Plaintiff does not allege any pattern of assaults or other constitutional violations which could be traced to inadequate training. Neither does Plaintiff sufficiently allege that more or different training was obviously necessary to avoid constitutional violations. Therefore, Plaintiff fails to make a plausible claim of deliberate indifference. Furthermore, with respect to causation, Plaintiff makes only the conclusory allegation that inadequate training caused the alleged violation. Of course, mere conclusions do not suffice under *Iqbal*. Given the lack of any factual allegations of causation, Plaintiff's claim fails here as well.

For the same reasons, the insufficient staffing claim also fails. The Amended Complaint states the following with respect to insufficient staffing: (1) on "November 29, 2010 the Lincoln County Detention Center was understaffed and had been consistently understaffed for months prior to the battery;" (2) "Defendant Emerald knew of the gross inadequacies in staffing of the jail…;" (3) "[w]hile awaiting release, Berry was attacked by one or more assailants who were detainees;" and (4) "[s]taffing of the jail … was the cause of the violation of the constitutional rights alleged by Plaintiff." *Id*. ¶¶ 11-14.

Again, the Amended Complaint lacks any allegations about a pattern of assaults or other constitutional violations which could be traced to insufficient staffing. Neither does Plaintiff sufficiently allege that more staff was obviously necessary to avoid

constitutional violations. Therefore, Plaintiff fails to make a plausible claim of deliberate indifference with respect to insufficient staffing. As above, Plaintiff's conclusory allegation that insufficient staffing caused the alleged violation does not present a plausible claim of causation.

Plaintiff has failed to state a § 1983 claim against Defendant Emerald on either inadequate training or insufficient staffing. Accordingly, the Court GRANTS Defendant's Motion to Dismiss. Plaintiff's § 1983 claim against Defendant Emerald is DISMISSED without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claim under the New Mexico Tort Claims Act. *See* 28 U.S.C. § 1367(c)(3). As such, that claim is also DISMISSED without prejudice.

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent